Arguments not to exceed 15 minutes per side. Mr Heidinger for the appellant. May it please the court, my name is Benjamin Heidinger and I represent appellant Michael Mirando. At this point I'd like to reserve three minutes of my time for rebuttal. Mr Mirando respectfully requests that this court reverse the district court's decision to grant summary judgment in favor of the United States based upon the affirmative defense of judicial estoppel. First, the district court abused its discretion by failing to grant Mr Mirando's request for leave to file a surreply in this case. And second, the district court erred as a matter of law by granting summary judgment in favor of the United States based upon the affirmative defense of judicial estoppel. What's the best case that you're relying upon here in support of your position? Not on the surreply, but on the fact that judicial estoppel doesn't apply. With regard to judicial estoppel, United States v. Hammond, which this court... Is that the unpublished opinion in 2008? Yes, it is, your honor. It's not on the United States Supreme Court's three-prong analysis in New Hampshire v. Maine and United States v. Finch, which discusses ambiguities in plea agreements. It is our position that first the plea agreement must be construed against the government, and two, in this case the plea agreement is ambiguous as to whether the appellant Michael Mirando specifically agreed to the tax assessment as being an accurate tax assessment for civil tax purposes. It was sort of spelled out. It wasn't like some of these other cases. It wasn't too ambiguous, was it? It was in that in the body of the plea agreement and the attachment to the plea agreement and the amount actually paid by Mr. Mirando were different figures. Two, the He's not quibbling about something like $18,000 at this point, is he? Correct, but if there is... So to the extent of any ambiguity, his position would be inconsistent, utterly inconsistent with any possible position that might be supported by the plea agreement, its attachment or what he in fact paid, correct? Correct, but there's still a difference between the correct civil tax figure and what is a tax loss figure in a criminal case. It should be noted that with regard to judicial estoppel that it must be applied with caution to avoid impinging on the truth-seeking function of the court because it precludes a court from assessing either of the statements and their truth. You know, it's a little odd in this case. You complain a good bit in your brief about lack of evidence and the docket sheet, oddly and I'm assuming since that's not apparent on either the face of the plea agreement or for that matter on the judgment, which the parties didn't supply us but which is readily available to the court, it's doubtless based on something that was in the record and yet neither of the parties supplied us with whatever it is in the record that would demonstrate the acceptance of the plea agreement and I find that you can't tell from this case whether he was, one, whether the plea agreement was accepted as a matter of anything other than the docket sheet or two, whether he was sentenced in accord with the plea agreement but both of those things are readily available to both parties. So it seems a little disingenuous for you to say there's no evidence. If the evidence were readily available, it seems similarly, I'm not sure why the government wouldn't delve a little deeper too. I think with some of my arguments regarding evidence, it was that the specific amount was not in the criminal body. Is that the only evidentiary deficiency about which you complain? No, there's also that there's no evidence to support a finding that the district court specifically found that that was the tax assessment or the tax loss figure with regard to his sentencing. You don't contest the fact that the district court did indeed accept the plea agreement? I do not. Okay. So your contention is that there has to be evidence of a different thing, not the plea agreement, but evidence of the district court's specific endorsement of a specific figure which is the same as the specific figure in the plea agreement? Correct in that with regard to the two criminal charges he was charged with, the tax loss figure is not an element of that crime. So agreeing to plead guilty to those crimes is not... Well, I think what we're focused on is the inconsistency between his admission as to the tax liability in the criminal case and his later taking a position in civil proceedings that was inconsistent with that. What with regard to taking a tax loss figure, in my experience, the purpose of the tax loss figure isn't to be exact usually in cases because of the sentencing guidelines give ranges. So it's not necessary to, one, have a specific tax loss figure for criminal purposes, and usually on the back end, either the United States will come and bring suit to actually increase that figure. Right, but in the Hammond case, the unpublished 2008 decision of this court that you rely on, the amount he owed in taxes in the amount of approximately 2.39 million. Whereas here, I think the plea agreement said that the parties agree that the government could prove beyond a reasonable doubt that your client owed $448,776.13, down to the penny, right? I guess I read that as... Your client agreed with that. Which means that they examined the records they had. At this point, my client was still incarcerated and didn't have an opportunity to defend himself at this examination. Wait a minute. This says something else. This doesn't say this is what the IRS computes it to be. It says the parties, meaning your client and the government, agree that the IRS... I mean, that's something entirely different from what you're contending at this point. I guess in the sentence proceeding where it says the amount of $448,000, it says that the IRS assessed the tax interest and penalties for Miranda's tax due for the 95 and 96 tax years, as well as the unpaid tax liabilities for 2000 and 2000. The language that Judge Gilman read is from paragraph one under factual basis for plea and it applies to all the subsequent numbers. Would you agree? I would agree. In going on to whether there was an acceptance by the court, or I'm sorry, whether there was actually an unfair advantage for taking this position before the civil court, there's no evidence in the record that he received a shorter sentence and gained a benefit from admitting to this tax loss figure. Well, the plea agreement in and of itself reflects a benefit to him in terms of the government prosecuting certain other kinds of offenses. With regard, I assume you're alluding to his ex-wife and children? Yes, and I think isn't there a paragraph about him too? But in any event, I mean, whether he got a shorter sentence or not, the government assumed some obligations on the face of the plea agreement. Yes, but relating, now I'm looking at it, relating both to Mr. Miranda and to his family members. I would say that there was a third party benefit and didn't actually benefit Mr. Miranda well in some sense. Well, he apparently cared about it enough to make that a reason, presumably, for entering into the plea agreement. I would agree with that statement. What are you saying? If the agreement just said he owes approximately $450,000 in tax, would it have been the same as the precise figure that was stipulated to? I'm not sure I understand your question. Well, would the sentence have been the same within what range? Yes, the range is from, I believe it's $400,000 to $600,000 is the range. So between that figure, his sentence would have remained the same. Lastly, the IRS, or I'm sorry, the United States states in their brief that they would have a detriment if this case went forward because the IRS destroyed many other records in this case with regard to his examination. It is on the plaintiff in this case, Mr. Miranda, to go before the court, and he has the burden to prove that there is a difference between what the civil tax assessment was from the service and what he believes the actual tax assessment should be, and that's in Sherman Williams v. United States at this court. I mean, you're saying there's no detriment to the government. Correct. How much is your client claiming, about $125,000 in tax refunds? It's $118,000. $118,000. Yes. And we have, during discovery, we have records to back up all of that. What your client sort of stipulated to in the plea agreement is the accountant now says, oh no, you overdid it, and you don't really owe as much as you thought you did when you entered the guilty plea? Correct, Your Honor. And there was a different counsel on the case for his criminal matter in which it's our belief that he didn't take the best course of action in constructing this plea agreement, and he didn't have the specialization in criminal tax that would be necessary to adequately represent him before this. And I see that my time is up. Good morning, Your Honors. Gretchen Wolfinger for the Department of the Treasury. It's our position that the district court correctly determined that Mr. Miranda was stopped by his plea agreement from filing his refund claims. The district judge correctly analyzed the factors of judicial estoppel and correctly determined that estoppel did apply. The first factor is that the party's later position was inconsistent with his earlier position, and I think, as Judge Gibbons noted, the plea agreement specified, as Judge Gilman also stated, to a penny the amount of tax liability. And his subsequent refund claims for $125,000, as we calculated, are clearly inconsistent with the position that he took in his plea agreement. Well, then, the plea agreement, was it a different figure than what eventually he paid, about $18,000 or some odd cents there? Yes, Your Honor, and I don't believe that makes the plea agreement inconsistent at all. If we're going to give the benefit of the doubt to Mr. Miranda, the $448,000 would set the ceiling. He could not receive refunds for anything less than that. However, when he paid the additional approximately $18,000, it's unclear to me, pursuant to the plea agreement in which he stated that he had reviewed the plea agreement and he and his attorney had both discussed it, why he paid the additional money. But he had a remedy, certainly during his incarceration and when he was on release, to come back in and ask for the refund of that additional money, which he didn't do. So, therefore, I don't see any inconsistencies. Why couldn't he just sue civilly for that amount? Well, and I'm sorry, Your Honor, that's the third point. This refund action bears no relationship, or these refund actions bear no relationship to that $18,000. If he were coming into court asking for the refund of the additional money, that would be one thing, but his refund claims here are far in excess of the $18,000. It's almost $125,000. And he's specifying particular tax years. He's tying the refunds to tax years and not to the plea agreement. What happened here? Did the IRS mess up during the plea agreement process and find another $18,000 that was owed or something like that? Or do you know? You may not know. Are you asking me where the additional money went? Well, where it came from, that they originally estimated the amount that was owed and then we could pick up another $18,000 later on in the process. I don't know where those numbers came from, Your Honor. All the parties clearly reviewed the plea agreement, and Mr. Miranda initialed the pages of the plea agreement, so I do not know why there was a difference and why no one picked up on it. He obviously didn't voluntarily just say, oh, I'll give you another $18,000, IRS. I mean, the IRS must have later asserted that, hey, $448,000 wasn't enough. No, Your Honors. Pursuant to the plea agreement, he paid the money that was due prior to having the plea accepted and being sentenced. What point was the plea accepted, clearly? I mean, how do we know from this record? I think presumably you can rely not only on the docket sheet where it says the plea was accepted, but the judge that... Well, the judge... I mean, the underlying document, I mean, I'm sure that it is very unlikely in this case that there was some sort of clerical error in that docket entry 11, but it's just a little... I mean, the court says, the judge says in his order he accepted the plea agreement, but we don't have a transcript that has him saying that. I can't find it reflected in the judgment. I mean, we're relying on a docket entry and then the district court saying it. I mean, nobody... We don't have the underlying record is my point. I understand, and that may be, in fact, because this case was brought between five and six years after the plea agreement was signed, and I don't know what kind of record keeping the courts do, but I would... Well, we've started, just as a matter of information, I mean, unfortunately we've started shedding archives, but so you can't go back necessarily 20 or 30 years, but you should surely go back five or six. I would think that there are two points to be made. Certainly the presumption of regularity, as Your Honor has indicated, the judge said he accepted the plea, and also the judge... And that's because the docket sheet says so. I would not necessarily say that, Your Honor. The judge that handled the original criminal case is also the judge... Because he said so in his order. Yes. So presumably if he had any question about what occurred, it's the same judge that handled the criminal case as well as the refund suit. So he should have known what he did. Secondly, I would imagine, it's also as Your Honor indicates, it's possible that Ms. Miranda spent significant time in jail. Had the plea agreement not been accepted, it's difficult to believe that he would have spent significant time in jail without someone bringing that to the attention of the court. But as Mr. Heininger said, if the tax liability had been anywhere between $400,000 and $600,000, the sentence would have been the same. I mean, the range... So, I mean, how is the government prejudiced to where judicial estoppel should apply just because the figure was pegged at $448,000 something? Oh, I think it's prejudiced in a number of ways, Your Honor. As we indicated in our brief, the records supporting the underlying tax liability calculations have either been lost or destroyed. Right, but as he points out, the burden now, though, for the refund is not on you, the government, it's on him. He's got... The burden initially is on him to come in and say what he believes his tax liability is. The IRS might disagree with that, and the IRS would then go to its records to see whether his presentation or his belief in his tax liability is correct. They can no longer do that. And I believe also, as Judge Gibbons pointed out, the United States has now lost the ability to prosecute other members of Mr. Miranda's family, certainly his wife, for any tax offenses. The statute of limitations has long expired, and as his wife signing the tax return, she would have been jointly and severally liable for the tax liability as well. She would have provided another source, conceivably, of collectability, and the government has foregone prosecuting her. I guess, you know, I guess one of the cases, though, that is the fundamental bedrock of judicial estoppel is this, what, New Hampshire v. Maine case from the U.S. Supreme Court in 2001, but that was a boundary dispute between New Hampshire and Maine over, what, the waterways or what, an ocean or something, lobsters, I don't know what they were fussing about, but it clearly wasn't taxed. So, I mean, do you have a tax case that really directly supports your position of judicial estoppel? No, I don't, Your Honor, but I wouldn't necessarily view this as a tax case. I would view it as a criminal case involving a plea agreement. It happens to arise out of a tax offense, but all the government is seeking to do is give effect to the plea agreement that was entered into. Well, isn't this, I mean, I'm not sure I buy that. It just happens that the inconsistent position in litigation was taken in a criminal case, not a civil case. I mean, why should the criminal nature of the proceeding give it, make an inherent difference? And my point was, it's not the criminal civil nature. It's a plea agreement that's been entered into. It doesn't matter that it's a tax case. Well, it's, I mean, one might argue, for example, that it's a very formalistic, that it's an admission to which he should be held because the nature of a plea agreement is that it is a very formalistic admission admitted only after the most searching inquiry, entered only after the most searching inquiry into the defendant's knowledge and understanding of what he was doing. And so, but it's not the criminal nature in and of itself. No, and if you want to look at it in a perhaps more broad context, it's essentially a contract between the United States and Mr. Miranda. And the United States has performed its obligations under the contract, including, regardless of whether the district court accepted it, the government stood up and asked that Mr. Miranda receive a three-level reduction for acceptance of responsibility, which was contingent on his payment of the tax liability, as well as his acceptance of responsibility for that amount of tax liability. So regardless of what the district court did with the three-level reduction, which I do believe he accepted, the government made that recommendation. It didn't stand silent. So it has performed under the contract. There was something here where it wasn't clear that he got the three-level reduction. I think all the plea agreement required was that the government request it, and I believe it did. We certainly haven't heard anything from Mr. Miranda that it didn't. And of course, he did pay the amount stipulated, plus 18 more. Yes, right. But as I explained, the 18,000 is unrelated to the refund claims he's bringing. Tell me again the point at which the money was paid. My understanding was that it was a condition precedent to the plea agreement, that it had been paid certainly by the time of sentencing, but had been paid pursuant to the plea agreement roughly contemporaneous in time. That was my understanding. So that would clearly have been something that would have been taken into account in sentencing and in deciding whether to grant acceptance of responsibility. Say that again, Your Honor. That's clearly something that would have been taken into account in deciding whether to give acceptance of responsibility. Of course, we'd know all that if anybody had given us a sentencing transcript or a transcript of where the court said it accepted the plea agreement. The only other thing... I'm not sure that what, to be clear, I'm not sure that what we have is not enough. But, you know, I was a district judge for a long time. I like to look at it and know. The only other thing I can suggest, and the court may have already looked at it, and it is also not in the record, is the pre-sentence report. And that would include a sentencing calculation. Well, the pre-sentence report would be available, but it's not docketed. So we wouldn't have a way to get that without the parties providing it to us. The big difference here is you have the same judge who presided at the criminal matter that was in the civil matter. So he probably didn't need any records because he remembered it and nobody contested the fact that whether he gave him three points or two points or whatever it was for acceptance of responsibility. We don't know it, but he obviously knew what he did. He should have, yes, Your Honor. Well, it's kind of... it can be analogized to the situation where you're the district judge considering a 2255 motion in a criminal case and the defendant makes an argument which you know is not in accord with the facts as they occurred at trial. And if you're the district judge, you'd probably attempt to set the record straight. You probably wouldn't go get a transcript. Or there might be things like the demeanor of an individual that a transcript wouldn't show. And one would hope, if you're the district judge, that the appellate court would give some credence to what you had to say about it. But that's the kind of situation we've got. I have a few minutes left. Would the court like me to address the sir reply issue? Go ahead. Whatever you want to do. We maintain that it was not an abuse of discretion for the district court not to entertain the sir reply. I think it was clear that the judge correctly analyzed the factors under judicial estoppel. The sir reply was essentially only one paragraph that spoke to one of those factors. And it was clear from the status conference that the government's argument was that the plea agreement stopped Mr. Miranda from bringing his refund claims. So it was clear that estoppel was going to be the government's defense to the refund. You started with the wrong kind of estoppel. Yes, we did, your honor. Collateral estoppel. Yes, we did, your honor. The last minute to judicial estoppel. Right. And that in some way speaks to opposing counsel's discussion about the fact that the amount of the tax liability for collateral estoppel purposes is not an element of the liability that he discussed that a little bit in his opening presentation about the fact that we had specifically agreed on the amount of the tax liability, that that's not an element of evasion, but that is a collateral estoppel argument, not a judicial estoppel argument. Thank you. Your honors, I'd first like to address the surreplie issue. The government didn't, like it was at the last minute, switching from collateral estoppel to judicial estoppel. Not only in their motion for summary judgment and their amended answer did they say that their affirmative defense was collateral estoppel, it was only three days after that amended answer was filed in which they switched from the affirmative defense of collateral estoppel to judicial estoppel in which Mr. Miranda had no opportunity to contest and give any sort of support for our position that judicial estoppel does not apply in this matter. Well you're able to raise it here, so what's the prejudice for failing to have the surreplie? And as I previously spoke, it's our position that it's not clearly inconsistent, our position now with the plea agreement because of those ambiguities in the plea agreement. It does allow us now that because there is a difference between what was paid and what was in the plea agreement, instead of just allowing us to claim that difference, we should be able to, because that difference is there, it is our position that judicial estoppel does not apply and therefore we should be able to bring evidence before the court to show what the difference is. It does not your honor. What evidence would you have presented? During discovery we provided the government receipts, bank statements, and I believe 1099s. Are you talking about evidence going to the amount of refund or evidence going to the estoppel argument? Evidence to the refund amount. With regard to the estoppel, we would have argued pretty much what we argued before this court. And to be clear, the district court did not reject your surreplie, it just did not affirmatively act upon it and we don't know whether it was considered or not, do we? It would be my position that it was not considered because not only was the only other outstanding motion specifically mentioned and granted in the opinion in order, also in the opinion in order under the caption it states which three docket numbered motions were being resolved at that point. It doesn't refer to a reply as being docketed. I mean, if you're talking about a motion, you're talking about the motion that's docketed. Correct. And it referenced the motion for summary judgment, it referenced the motion to amend. I'm sorry, I'm out of time. Could I finish my? Finish your sentence. It referenced the motion for summary judgment and the motion to amend their answer. Okay. All right. We appreciate the argument both of you have given and we'll consider the case carefully. Thank you. The court may call the next case.